Carlos BUELNA–MENDOZA, Defendant
and Appellant,

v.

UNITED STATES of America,
Plaintiff and Respondent.

No. 25460.

United States Court of Appeals,
Ninth Circuit.

Jan. 13, 1971.

Richard S. Henderson (argued), San
Diego, Cal., for appellant.

Eric Nobles (argued), Asst. U. S.
Atty., Harry D. Steward, U. S. Atty.,
Joseph A. Milchen, Asst. U. S. Atty.,
San Diego, Cal., for appellee.

Before MERRILL and HUFSTED-
LER, Circuit Judges, and BYRNE,* Dis-
trict Judge.

* Honorable William M. Byrne, United States District Judge, Los Angeles, California, sitting
by designation.

BYRNE, District Judge:

Appellant Buelna-Mendoza was convicted, in a trial without a jury, on charges of knowingly concealing and facilitating the transportation and concealment of 660 pounds of marihuana which the appellant knew had been imported into the United States contrary to law and of conspiring to commit the foregoing acts, all in violation of 21 U.S.C. § 176a.

At about 11:00 a. m. on August 14, 1969, an informant telephoned Leo Banda, a Special Agent for the Bureau of Customs, and advised him that a red 1964 Chevrolet Malibu, with California license plates, would be carrying a large load of marihuana to Los Angeles. The informant told Banda that the vehicle would reach Los Angeles from Calexico, California, by taking Highway 78 to Blythe, California, and then proceeding west on Highway 10. This circular route was apparently instituted to avoid contact with immigration inspection stations which are situated along the more direct route to Los Angeles. The informant identified the driver as the person who had been pointed out to Banda a week earlier, while he had been under surveillance on a sidewalk in Calexico.

Banda relayed this information, including his own description of the driver, to Special Agents Donald Quick and Sterling Epps. Banda told Quick that Epps would be able to identify the driver because he was the same man who had been pointed out to them a week earlier.[1]

At about 2:30 p. m., Epps observed a vehicle which met the informant's description proceeding on Highway 78 approximately two miles north of Ripley, California. Epps followed the vehicle to the outskirts of Blythe where the driver stopped at a gasoline station. The driver was recognized by Epps as the man he had seen the previous week in Calexico and as the individual who matched Banda's description.

When the vehicle left the service station and headed from Blythe to Los Angeles, Epps radioed Special Agent Owen Miller, who had been stationed along the projected route, and informed him of all he had observed. At about 3:45 p. m., Miller stopped the appellant's vehicle at Chiciaco Summit, which is approximately fifty miles west of Blythe. Miller was immediately joined by Agent Epps and a California Highway Patrolman. A search of the automobile's trunk resulted in the finding of 300 kilo bricks of marihuana. The appellant was identified as the driver of the vehicle.

The appellant testified in his own defense. According to the appellant he resided in Mexicali where he worked in a gin mill. However, when asked on cross-examination about the cars he had driven to Los Angeles, he said he was in the business of buying and selling cars in Tijuana and Los Angeles during the past four months. He further testified that on August 14, 1969, he was approached by two men who offered him $70 to drive the automobile in question from Calexico to Los Angeles. Although he considered the men to be strangers, the appellant knew one of the men was named "Huero". The appellant suspected the trunk contained contraband, because he was aware of the "heavy weight in the rear". The appellant chose not to investigate his suspicions by opening the trunk.

■ None of the three arguments advanced by appellant requires reversal. His first contention is that the Government failed to produce any evidence that

---

1. Approximately a week prior to the events which are the subject of this appeal, Agents Banda and Epps were dispatched to an intersection in Calexico, California, to assist in the surveillance of a suspect. The suspect they observed that afternoon was the appellant.

the marihuana discovered in the trunk of the automobile which he had been driving had been imported into the United States. Our review of the record convinces us that the Government presented sufficient evidence to support the holdings of the trial court that the marihuana had been illegally imported and that the appellant knew of the illegal importation.

The vehicle which the appellant drove from Calexico had been observed by Agent Miller on the morning of August 14, 1969, parked in the customs brokers' lot, just west of Calexico port of entry. The lot is approximately fifty feet from the international border. Agent Miller, who had seen kilo bricks of marihuana packaged from Mexico on numerous occasions, was of the opinion that the marihuana concealed in the trunk of the automobile which had been driven by the appellant was from that country. Miller based his opinion on the size and form of the kilo bricks as well as the presence of baby powder which covered the bricks. The agent found the baby powder significant because a shipment of marihuana from Mexico which had been discovered in the previous week, had also been covered with that substance. There was ample evidence to justify the trial court's decision that the marihuana in question came from Mexico.

The appellant's knowledge of this illegal importation is demonstrated by his admission that he suspected contraband was present in the automobile's trunk. Conveniently, appellant was never motivated to investigate this suspicion by opening the trunk, despite the fact that he could feel that it was "heavy in the rear". Additionally, his obsequious attitude toward two strangers and their patently suspicious offer strongly support the lower court's inference that he had knowledge of the illegal importation.

Second, appellant argues the trial judge erred in denying his motions to suppress and for judgment of acquittal because the 300 kilo bricks of marihuana discovered in the trunk of the automobile he had been driving was the product of a search instituted without probable cause. We disagree with appellant's assessment of the probable cause issue, noting the Fifth Circuit's recent finding of probable cause to search in a factual situation remarkably similar to the instant one. In United States v. Acosta, 411 F.2d 627 (5th Cir. 1969), an informer notified a customs agent that a quantity of heroin was to be smuggled into the United States from Ojinaga, Mexico. The informer described the year, color, make, model and license number of the automobile which the smuggler would be driving. The description of the smuggler given to the agent by the informer was less specific, that is, a young Mexican male. The agent learned from a second telephone call from the informer that the smuggler had accepted delivery of the heroin in Presidio, Texas. Approximately two hours after receiving the second call, the agent and two Border Patrol Inspectors stopped the defendant on a road leading from Presidio. A search of his person resulted in the discovery of an ounce of heroin.

█ We are satisfied by our review of the evidence that the two-pronged requirements for an informant's tip to establish probable cause which was announced in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and explicated in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), have been met. The informer who contacted Agent Banda had a recent history of supplying the Government with accurate information concerning criminal activity.[2] Here, unlike Acosta, the in-

2. This informant had, within a period of a month, twice given Agent Banda accurate information concerning the smuggling of contraband. On one occasion, information

formant was able to specifically identify the driver of the "load car". The year, color, and make of the automobile in which the contraband was concealed were described by the informant. Although he was unable to provide the automobile's license number, the informant alerted authorities to the fact that the car had California license plates. Also, the informer supplied Agent Banda the circuitous route to Los Angeles the automobile containing "the large quantity of marihuana" was to travel. In short, the informant's reliability coupled with the detailed nature of the information he provided the Government, persuaded the district court that the customs agents had probable cause to search the trunk of the automobile the appellant had been driving. We agree.

Third, and last, appellant argues the trial judge's decision of guilty cannot stand because Counts I and II of the indictment are inconsistent. We find no inconsistency in the two counts. The appellant drove an automobile containing approximately 660 pounds of marihuana from Calexico, California to Chiciaco Summit. The appellant admitted that he had agreed to make this drive after being approached by two men in the Calexico bus depot. The heavy weight in the trunk forced him to concede that he did suspect that the car was carrying some form of contraband. This evidence supports the trial court's decision finding the appellant guilty of conspiring to facilitate the transportation of marihuana illegally imported into the United States (Count I) and of transporting this contraband (Count II).

Affirmed.

received from the informant led to the discovery of contraband concealed in an automobile which had just crossed the international border. On another occasion, the informant's information concerning an individual described as a smuggler corresponded with information on file. This informant had also given Banda information about a vehicle said to be used in a smuggling operation; Banda never found this vehicle.