CODMONWEALTH *vs.* ALVIN MITCHELL.

Hampden.    December 4, 1967. — December 29, 1967.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, SPIEGEL, &
REARDON, JJ.

*Arrest.*

Where one known to the police as a supplier of narcotics was observed by police officers to surreptitiously hand another person a small packet and receive money from the other person, there was probable cause

---

for arrest of both persons and evidence resulting from their arrests
was not to be suppressed and was properly admitted in a criminal
proceeding against the purported seller for an illegal sale of a narcotic.

INDICTMENT found and returned in the Superior Court on
January 10, 1967.

A motion to suppress was heard by *Brogna,* J., and the
case was tried before him.

*Stephen W. Silverman* for the defendant.

*Matthew J. Ryan, Jr.,* District Attorney (*Leonard E.
Gibbons,* Assistant District Attorney, with him), for the
Commonwealth.

SPALDING, J.  Under an indictment charging unlawful
sale of a narcotic drug (heroin), the defendant was found
guilty by a jury.  The case, having been tried subject to
G. L. c. 278, §§ 33A–33G, comes here by appeal.

We summarize the evidence as follows:  Springfield police
officers, to whom the defendant was known as a user and
supplier of narcotics, had kept him under surveillance for
about a month prior to December 15, 1966.  On December
15 Officers Coville and Collins saw the defendant, who was
sitting in a diner on Main Street, come to the door of the
diner and call to one Thomas E. Harris, who was passing
by.  Harris stopped and he and the defendant had a con-
versation.  They then walked to the vestibule of the Para-
mount Hotel where the defendant was seen to "hand . . .
something" to Harris and Harris in turn gave the defendant
some paper currency.  Following this exchange both men
entered the hotel.  A short time later Harris left the hotel
alone and was followed by the officers into the Lyman
Hotel where he was arrested in the corridor outside his
room.  A search of Harris revealed a hypodermic needle and
an eyedropper.

Harris admitted to the officers that he had just purchased
heroin from the defendant in exchange for $10 and that he
had used the drug after entering the hotel with the de-
fendant.  Harris told the officers that since he had no hypo-
dermic needle or eyedropper he borrowed them from the
defendant.

As a result of their conversation with Harris, the officers set out to find the defendant. They observed him walking on Main Street and placed him under arrest. The defendant resisted the officers and as they were attempting to put him in the police car he pulled something out of his pocket and started to stuff it in his mouth. The officers prevented this and took from the defendant's hand a packet which contained heroin.

The sole question for decision arises out of the defendant's motion to suppress. The defendant sought to suppress any evidence seized during the arrest of either Harris or himself. The motion was denied subject to the defendant's exception.

In support of this exception the defendant argues that on the basis of what the police officers observed when the exchange between the defendant and Harris took place probable cause was lacking to arrest either. He further argues that information gained from the arrest of Harris cannot validate the arrest of the defendant because this was the fruit of an illegal search.

As was said in *Beck* v. *Ohio,* 379 U. S. 89, 91, "The constitutional validity of the search in this case . . . must depend upon the constitutional validity of the . . . arrest. Whether the arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it — whether at that moment the facts and circumstances within their knowledge and of which they had . . . trustworthy information were sufficient to warrant a prudent man in believing that the . . . [defendant] had committed or was committing an offense." Applying those principles here, we are of opinion that the officers had probable cause to arrest Harris and the defendant and that the evidence resulting from the arrests was properly admitted. The defendant had been under police surveillance for approximately one month. He was known to the police to be an illegal user and supplier of drugs. When the police observed him exchanging a small packet for money under surreptitious cir-

cumstances, their belief that felonies (in which both Harris and the defendant were participating as possessor and seller respectively) were being committed in their presence was amply justified. *Ker* v. *California,* 374 U. S. 23. See *Brinegar* v. *United States,* 338 U. S. 160, 172–176; *Draper* v. *United States,* 358 U. S. 307, 310–314; *Henry* v. *United States,* 361 U. S. 98, 102; *Commonwealth* v. *Holmes,* 344 Mass. 524, 525; *Commonwealth* v. *Lawton,* 348 Mass. 129, 133. Compare *Commonwealth* v. *Rossetti,* 349 Mass. 626, 633–634.

*Judgment affirmed.*